UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RAEANNA STEFFENHAGEN,

                        Plaintiff,                09-CV-6485T

            v.                                    **DECISION**
                                                  **and ORDER**
NORMAN R. MORRILL, LUCILLE P. MORRILL,
ROBERT SULLIVAN, and SONJA SUHR,

                        Defendants.
_____

## INTRODUCTION

Plaintiff Raeanna Steffenhagen ("Steffenhagen") brings this negligence action against defendants Norman R. Morrill, Lucille P. Morrill, Robert Sullivan, and Sonja Suhr, claiming that the defendants are responsible for subjecting her to lead paint poisoning. Specifically, plaintiff alleges that the defendants, all of whom are landlords who owned rental properties where the plaintiff lived when she was a child, failed to properly maintain or repair their properties so as to make them safe for habitability by the plaintiff. She alleges that each of the properties contained chipped or pealing lead paint, and that she ingested lead paint while living at the properties, resulting in elevated levels of lead in her blood. She claims that the lead poisoning has caused her to suffer cognitive deficits and other injuries, for which she seeks damages from the defendants.[1]

_____

[1] This action was originally commenced in New York State Supreme Court, Monroe County. Upon learning that the plaintiff is now a resident of the State of Louisiana, defendant Sullivan

In three separate motions, defendants Robert Sullivan ("Sullivan"), Sonya Suhr ("Suhr"), and Norman R. Morrill and Lucille P. Morrill ("the Morrill's" or "Morrill defendants") move for summary judgment against the plaintiff on grounds that they owed no duty to the plaintiff, or satisfied any duty owed, and therefore cannot be held liable to her for any alleged damages caused from lead poisoning. Specifically, the Sullivan and Morrill defendants allege that because they had no notice of any defective lead paint condition at the time plaintiff resided at their respective properties, they had no duty to remedy the alleged defective condition. Defendant Suhr alleges that she had no notice of any defective lead paint condition until she received a notice of such from a County health department, and that once she learned of the defective condition, she promptly abated the hazard, thus discharging her duty.

Plaintiff cross-moves for summary judgment on the issue of liability, claiming that there are no material facts in dispute, and that as a matter of law, all defendants were negligent in renting premises containing pealing or chipping lead paint. Plaintiff further alleges that there are no facts in dispute as to the causation of her damages, and that as a matter of law, each defendant caused her alleged lead poisoning. Plaintiff also moves

---

removed the action to this Court pursuant to this Court's diversity jurisdiction.

to strike certain affirmative defenses raised by the defendants, and to preclude certain defense experts from testifying or being considered by the Court, or, in the alternative, for a <u>Daubert</u> hearing regarding defendants' proposed expert witnesses.[2] Finally, defendant Sullivan moves to preclude testimony of plaintiff's expert witnesses on grounds that the testimony is based on information that was not disclosed in discovery.

For the reasons set forth below, I grant defendants' motions for summary judgment, deny plaintiff's motion for summary judgment, and deny as moot plaintiff's motion to strike defenses and preclude testimony, and defendant Sullivan's motion to strike.

## BACKGROUND

Plaintiff Raeanna Steffenhagen was born on February 12, 1989. In October of that year, when she was approximately 8 months old, Steffenhagen moved with her mother, Marian Mohr, to 22 Karnes Street in the city of Rochester, New York. Mohr rented the premises from defendants Norman and Lucille Morrill, the owners of the property. Mohr received rental assistance from the Monroe County, New York, Department of Social Services, ("Monroe County") which paid all of Mohr's rental expenses directly to the Morrill

---

[2] A <u>Daubert</u> hearing is a hearing held by the Court for the purpose of determining whether or not expert scientific testimony proffered by any party may be admitted at trial. <u>See</u> <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993).

defendants by check.  Mohr lived at 22 Karnes Street with her daughter for approximately 2 years.

On October 1, 1991, plaintiff moved with her mother to 15 Myrtle Street in the city of Rochester, a property owned by defendant Robert Sullivan.  Again, Monroe County paid for all of Mohr's rental expenses directly to Sullivan.  Plaintiff lived there until no later than August, 1992, at which time she and her mother moved to 57 Lime Street in Rochester, New York, a property owned by defendant Sonja Suhr.  Mohr continued to receive rental assistance from Monroe County, which was paid directly by check to Suhr.  When plaintiff moved into the apartment at 57 Lime Street, she was approximately three and a half years old.  She and her mother moved out of the apartment on Lime Street on September 30, 1993, when plaintiff was approximately four years and eight months old.

According to Steffenhagen's mother, Steffenhagen was first diagnosed with an elevated level of lead in her blood sometime between October, 1989 and September, 1991 (when Steffenhagen was between the age of eight months and two years and eight months) while the two were living at 22 Karnes Street.  See Deposition Transcript of Marian L. Mohr (hereinafter "Mohr T.") at p. 312-313. Although the Amended Complaint alleges (upon information and belief) that the owners of 22 Karnes Street knew that pealing, flaking, or chipping lead paint was present at the premises, there is no evidence that the plaintiff's mother ever complained of any

pealing, chipping, or flaking paint inside or on any exterior surface of 22 Karnes Street.  The Morrill defendants, the owners of 22 Karnes Street, further deny that they were aware of any pealing, chipping, or flaking lead paint located inside the premises during Steffenhagen's tenancy.

Records provided by the defendants indicate that while Steffenhagen lived at 22 Karnes Street, she was tested for the presence of lead in her blood on April 16, 1991.  <u>See</u> Exhibit 11 to the February 5, 2013 Affidavit of Marsha Harris.  At that time, it was determined that Steffenhagen had a blood-lead level of 28.0 micrograms of lead per deciliter of blood.[3]  The April 16, 1991 test was the only time plaintiff was tested for lead poisoning while she lived at 22 Karnes Street.

Steffenhagen was tested three times for lead poisoning while she resided at 15 Myrtle Street.  On December 10, 1991, she was found to have a lead level of 25.0 ug/dl.  Five months later, on May 11, 1992, her level was 17.0 ug/dl.  Two months after that test, on July 10, 1992, her lead level was 20.0 ug/dl.  Again, although plaintiff alleges generally in the Amended Complaint that defendant Sullivan, the owner of 15 Myrtle Street, knew of a dangerous lead paint condition at the premises, there is no

_____

[3] Micrograms are abbreviated as "ug."  A deciliter, or 1/10th of a liter, is abbreviated as "dl."  According to an August 2005 Report from the Centers for Disease Control and Prevention, blood-lead levels greater than 10 ug/dl in children correspond to decreased intellectual quotient ("IQ") scores.  See Exhibit 6 to the Affidavit of Andy Williams-Lopez, Ph.D. submitted in support of plaintiff's motion for summary judgment.

evidence in the record suggesting that Steffenhagen's mother ever complained about any chipping, pealing, or flaking paint in or outside of 15 Myrtle Street during the 10 months she lived there. Steffenhagen's mother did state in an affidavit, however, that she noticed chipping and peeling paint in window wells located in the kitchen, and that she recalled seeing Steffenhagen putting paint chips in her moth when she lived there. December 4, 2012 Affidavit of Marian Mohr at ¶ 7.

Plaintiff was tested only one time for lead poisoning during the time she lived at 57 Lime Street. On February 17, 1993, her lead level was determined to be 21.0 micrograms of lead per deciliter of blood. There is no indication that she was tested again before she moved out of the apartment on September 30, 1993.[4] Steffenhagen's mother stated that she noticed chipping and peeling paint in the window well in the living room of 57 Lime Street, as well as chipping paint in the attic. December 4, 2012 Affidavit of Marian Mohr at ¶ 9. Plaintiff's mother further testified that 57 Lime was inspected for the presence of lead paint, and that defendant Sonja Suhr, was required to perform remedial work to abate the lead-paint nuisance. December 4, 2012 Affidavit of Marian Mohr at ¶ 10. Defendant Suhr alleges that prior to

---

[4] Additional lead poisoning tests conducted on the plaintiff after she moved out of any apartment owned by the defendants revealed levels of 14.0 ug/dl on November 11, 1994; 10.0 ug/dl on June 28, 1995, and 9.0 ug/dl on June 20, 1996.

receiving any notice from county health inspectors indicating that lead paint was found at the premises, she was unaware of the presence of lead paint in the apartment, or of chipping or peeling paint. She further alleges that Steffenhagen's mother never complained of chipping, flaking, or peeling paint in the apartment.

On September 24, 2009, at the age of 20, plaintiff brought the instant action on behalf of herself for alleged lead poisoning that occurred during a four year period between October 1989 and September 30, 1993. According to the Amended Complaint, the alleged lead poisoning caused her to become "severely, seriously and permanently injured." Amended Complaint at ¶¶ 34, 35, 46, 47, 61, 72, 86, 97. Although the Complaint alleges severe, serious and permanent injuries suffered by the plaintiff, it does not further elaborate on the nature of the injuries.

Plaintiff, through a report submitted by an expert, alleges that she suffers from damage to her brain "as manifested by neurobehavioral deficits and disorders, learning deficits and disabilities, and depression of her intelligence quotient" as a result of lead poisoning. December 4, 2012 Declaration of Susan Blatt, M.D., at p. 9. There is no evidence, however, that plaintiff herself or any parent or guardian of the plaintiff sought treatment for her alleged deficits. Plaintiff testified that she could not recall ever having any discussion with a medical doctor regarding her alleged lead poisoning. Deposition Transcript of

7

Raeanna Steffenhagen (hereinafter "Steffenhagen T.") at p. 100. Plaintiff further testified that she could not recall ever discussing lead poisoning with any psychologist or psychiatrist. Id.

The plaintiff testified that she completed school through the seventh grade. Steffenhagen T. at p. 40. Steffenhagen's mother explained that she was expelled from school at that time. December 1, 2009 Affidavit of Marian Mohr at ¶ 6. The record indicates that Steffenhagen frequently changed residences throughout her pre-school and school years. According to Steffenhagen's mother, in addition to living at three different apartments in the City of Rochester prior to age five, Steffenhagen moved to a trailer home in the Town of Cohocton, New York, with her mother, and lived there for approximately a year. Id. at ¶ 5. The family then moved back to Rochester, and lived on Murray Street for "a couple of years." Id. The family then moved to 11 Zimbach Street in the city of Rochester for a couple of years. Id. Steffenhagen then moved out of her mother's house, and resided with her father for approximately a year. Id. Thereafter, pursuant to a court order, Steffenhagen lived with Ms. Dawn Wells for approximately a year. Id. Following that period, Steffenhagen moved back in with her mother in Macedon, New York, where she again attempted to complete seventh grade, but was expelled from school. Id. According to

Mohr, Steffenhagen was also expelled from two other middle schools. Id. at ¶ 12.

Defendant Sullivan contends that any deficits in plaintiff's functioning are a result of difficult family circumstances including being the third child of a non-marital union; being subjected to prenatal marijuana and cigarette use; being raised by authority figures who suffered from alcoholism, illegal drug use, and mental illness; being subjected to physical and possible sexual abuse; being raised in an unstable, highly stressful environment along with several other factors.  See Report of Dr. David M. Erlanger, Ph.D. at ¶¶ 7, 10, 12, 13  Plaintiff objects to the conclusions of defendant Sullivan's proposed expert, and asks that the expert's opinions be stricken on grounds that they are not reliable.  According to the plaintiff, her cognitive deficits are a result of the lead poisoning she suffered when residing at the defendants' properties, and it is her cognitive deficits which have caused her to not complete school beyond the seventh grade.

## DISCUSSION

I.   The Parties' Motion for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  When

considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought. <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. <u>Scott</u>, 550 U.S. at 380 (citing <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-587 (1986)).

  II. Standard for Establishing Liability of a Landlord for <u>damages caused by lead poisoning</u>.

  In general, to state a claim for liability as a result of a defendant's negligence, a plaintiff must demonstrate that the defendant owed the plaintiff a cognizable duty of care, breached that duty; and that the plaintiff suffered damages as a proximate result of the breach. <u>Evans v. U.S.</u>, --- F.Supp.2d ----, 2013 WL 3967119, *24 (E.D.N.Y., 2013 July 31, 2013). In cases involving alleged lead poisoning that resulted from exposure to lead paint located in an apartment, to establish the liability of a defendant landlord, the plaintiff must show that the landlord "had actual or constructive notice of, and a reasonable opportunity to remedy, the hazardous condition," but failed to do so. <u>Pagan v. Rafter</u>, 969 N.Y.S.2d 265, 267 (N.Y.A.D. 4th Dept., 2013), (quoting <u>Rodriguez v. Trakansook</u>, 887 N.Y.S.2d 860 (N.Y.A.D. 2d Dept., 2009) If a plaintiff is unable to establish that the landlord had notice of a

hazardous lead-paint condition, the plaintiff will be unable to establish that the landlord had a duty to prevent the plaintiff from being exposed to the condition, or to remedy the condition. See Carrero v. 266 Himrod Associates, LLC, 770 N.Y.S.2d 747 (N.Y.A.D. 2d Dept., 2004)(no duty to prevent exposure to or remedy chipping or pealing paint where landlord had no actual or constructive notice of the condition of the paint in the apartment); Wynn ex rel. Wynn v. T.R.I.P. Redevelopment Associates, 745 N.Y.S.2d 97 (N.Y.A.D. 3d Dept., 2002); Gonzales v. Nemetz, 714 N.Y.S.2d 751 (N.Y.A.D. 2d Dept., 2000)(landlord had no duty to prevent exposure to, or remedy chipping or pealing paint where landlord was unaware that chipping or pealing paint contained lead); Boler v. Malik, 700 N.Y.S.2d 323 (N.Y.A.D. 4th Dept., 1999); Andrade by Andrade v. Wong, 675 N.Y.S.2d 112 (N.Y.A.D. 2d Dept., 1998).

To establish that a landlord had a duty to prevent exposure to or remedy a hazardous lead-paint condition, the plaintiff must demonstrate that the landlord had actual or constructive notice of the lead-paint hazard. To establish actual notice of a hazardous lead-paint condition, the plaintiff must demonstrate that the landlord was actually aware that the some or all of the leased premises was painted with lead-based paint, that the paint containing lead was in a state of disrepair (through flaking, pealing, or cracking) and that it presented a danger of lead

exposure to infants who might ingest flakes or chips of paint containing lead.  See e.g. Stover v. Robilotto, 716 N.Y.S.2d 146 (N.Y.A.D. 3d Dept., 2000), order aff'd, 734 N.Y.S.2d 541, (N.Y., 2001)(evidence of a landlord's mere awareness of chipping paint will generally not satisfy the requirement that the landlord was aware of a defective lead paint condition); Flores ex rel. Hernandez v. Cathedral Properties LLC, 955 N.Y.S.2d 324, 325 (N.Y.A.D. 1st Dept., 2012) (defendants not liable for lead paint poisoning where defendants had no knowledge that children under the age of seven were residing in the leased premises).

To establish that a landlord had constructive notice of a hazardous lead paint condition, the plaintiff must establish that "that the landlord (1) retained a right of entry to the premises and assumed a duty to make repairs, (2) knew that the apartment was constructed at a time before lead-based interior paint was banned, (3) was aware that paint was peeling on the premises, (4) knew of the hazards of lead-based paint to young children and (5) knew that a young child lived in the apartment" Chapman v. Silber, 734 N.Y.S.2d 541, 543 (N.Y., 2001).  See also Pagan, 969 N.Y.S.2d at 267 ("The factors set forth in Chapman v. Silber, ... remain the bases for determining whether a landlord knew or should have known of the existence of a hazardous lead paint condition and thus may be held liable in a lead paint case.")  To establish that a landlord retained a right of entry to the premises, the plaintiff must demonstrate that the landlord retained the right to access the leased premises without the permission of the tenants.  Sanders v.

Patrick, 943 N.Y.S.2d 350 (N.Y.A.D. 4th Dept., 2012)(although landlord retained key to apartment, landlord did not have right to enter leased premises without tenants' permission).

### III. Plaintiff has failed to establish Liability for alleged lead poisoning on the part of any of the defendants.

#### A. Defendant Sullivan

Defendant Sullivan, the owner of 15 Myrtle Street in the City of Rochester, where plaintiff lived from October 1991 to August, 1992, claims that he had no notice, actual or constructive, of any defective condition resulting in a lead-paint hazard inside or outside the leased premises. In support of this contention, he submits his own sworn testimony demonstrating that at the time he rented the apartment at 15 Myrtle to the plaintiff's mother, he was not aware that lead paint had been banned for residential use; that older homes contained lead paint, or that lead paint posed a hazard to young children. See Deposition Transcript of Robert Sullivan (hereinafter "Sullivan T.") at pp. 63-64, 65-67, 114. He further testified that he would not enter a tenant's apartment unless requested to do so, and would enter only after obtaining specific permission from the tenant. See Sullivan T. at p. 135.

Sullivan further submits that there is no evidence in the record indicating that plaintiff's mother, or any prior tenant, ever complained of pealing, chipping, cracking, or loose paint inside the rented apartment at 15 Myrtle Street. See Mohr T. at p. 110-111. Although Mohr claimed that she observed cracking paint in

a single window well in the kitchen of the apartment, there is no evidence that she informed Sullivan of this condition.

Moreover, Sullivan submits additional evidence demonstrating that 15 Myrtle had not been tested for the presence of lead paint until July, 1993, almost one-year after the plaintiff had moved out of the apartment. <u>See</u> Sullivan T. at p. 114. An employee of the Monroe, New York, County Department of Health, Ms. Lee Houston, confirmed that no lead inspection of 15 Myrtle had occurred until July, 21, 1993. <u>See</u> Deposition Testimony of Lee Houston at p. 32-33.

Based on the evidence set forth in the record, Sullivan has established that he did not have actual or constructive notice of any lead hazard that may have existed at 15 Myrtle street before or during the plaintiff's tenancy. There is no evidence that Sullivan was actually aware, or made aware, of any alleged lead hazard, and plaintiff has failed to establish that Sullivan had constructive knowledge of any lead hazard. As stated above, to establish that a landlord had constructive knowledge of a lead hazard, the plaintiff must demonstrate, <u>inter alia</u>, that the landlord knew that the apartment was constructed at a time before lead-based interior paint was banned, was aware that paint was peeling on the premises, and knew of the hazards of lead-based paint to young children. <u>Chapman</u>, 97 N.Y.2d at 15. In the instant case, plaintiff has failed to submit any evidence suggesting that Sullivan was aware of

pealing paint on the premises, that he knew that lead paint posed a hazard to children, or that he knew that the apartment was constructed at a time before lead-based interior paint was banned. See e.g. Durand ex rel. Assad v. Roth Bros. P'ship Co., 696 N.Y.S.2d 234, 235 (N.Y., 1999) ("the fact that lead paint hazards frequently were the subject of media reports did not place [landlord] on notice that a dangerous condition existed in the plaintiff's apartment."); Hines by Garret v. RAP Realty Corp., 684 N.Y.S.2d 594, 595 (N.Y.A.D. 2d Dept., 1999)(evidence of the widespread media reports addressing the prevalence of lead hazards in older dwellings insufficient to establish landlord's constructive knowledge of dangerous lead paint condition in leased premises).

In opposition to defendant Sullivan's motion, the plaintiff makes many generalized arguments regarding a landlord's alleged duty to maintain leased premises in a reasonably safe condition, including being free of any lead paint hazards.[5]  But New York State law explicitly requires that an owner's duty to maintain

---

[5] Mo Athari, counsel for the plaintiff in the instant case, made similar generalized arguments regarding liability of defendants for lead paint poisoning in the case of Hines v Double D & S Realty Mgt. Corp., 946 N.Y.S.2d 298 (N.Y.A.D. 3rd Dept., 2013) leave to appeal denied, 2013-809, 2013 WL 5614429 (N.Y., Oct. 15, 2013).  In that case, the court characterized counsel's general reliance on statutory provisions such as Public Health Law § 1373 and Real Property Law § 235-b (both of which are cited to the Court in this action)  as "misplaced." Hines, 946 N.Y.S.2d 298.

rented areas in a reasonably safe condition excludes any duty to independently inspect for lead paint hazards. <u>Watson v. Priore</u>, 961 N.Y.S.2d 696, 698 <u>leave to appeal denied,</u> 967 N.Y.S.2d 864 (N.Y.A.D. 4th Dept., 2013) and <u>leave to appeal dismissed in part, denied in part,</u> 973 N.Y.S.2d 85, (N.Y. 2013) (statutory implied warranty of habitability does not give rise to a presumption that landlords had notice of the alleged dangerous condition in their properties arising from lead paint); <u>Chapman</u>, 734 N.Y.S.2d at 547-48 ("We decline to impose a new duty on landlords to test for the existence of lead in leased properties based solely upon the "general knowledge" of the dangers of lead-based paints in older homes").

Plaintiff next argues, in general terms applicable to all defendants, and without attribution, that "the defendants all acknowledged a duty to keep the dwelling unit safe, the right of entry to make repairs . . . . and [that all defendants] were cited for violation[s] of state statutes and state and/or local codes and regulations relating to chipping paint or lead hazards that existed during the tenancy." Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment at p. 5. Plaintiff, however, fails to cite any evidence whatsoever that would support this blanket allegation.

Plaintiff alleges that Sullivan knew that the property at 15 Myrtle was "old." General knowledge, however, that a building is

"old" fails to establish actual or constructive knowledge that a lead paint hazard exists. <u>Hines by Garret</u>, 684 N.Y.S.2d 594 (general knowledge that a building is old, and therefore likely to contain lead-based paint, does not constitute notice of a lead paint hazard). Plaintiff also alleges that Sullivan was cited with many property violations pursuant to Sections 90-21(C) and 90-21(D) of the Municipal Code of the City of Rochester. A review of the citations, however, reveals that none of the alleged violations were related to lead paint hazards. <u>See</u> Exhibit 2 to Declaration Number Two of Mo Athari, docket item no. 82-2.

Because plaintiff has failed to establish that defendant Sullivan had any notice of a dangerous or defective condition with respect to lead paint, I find that plaintiff has failed to establish that Sullivan may be held liable for alleged lead paint poisoning. I therefore grant defendant Sullivan's motion for summary judgment.

B.   <u>Defendants Norman and Lucille Morrill</u>

Defendants Norman and Lucille Morrill are the owners of 22 Karnes Street, where plaintiff lived from approximately October, 1989, to October 1991. The Morrill defendants contend that they are not liable to plaintiff for her alleged lead poisoning because they had no notice, actual or constructive, of any defective lead paint condition at the rented property prior to or during the plaintiff's tenancy. In support of this contention, the Morrill

17

defendants note that plaintiff's mother never noticed or complained of any defective paint condition inside the leased premises. See Mohr T. at p. 304. Although plaintiff's mother testified that there was chipping paint on a back porch, there is no indication or evidence that the chipping paint contained lead. Accordingly, while knowledge of the condition of the exterior and common areas of a property may be imputed to the owner (see Wynn ex rel. Wynn, 745 N.Y.S.2d 97) as stated above, an owner's knowledge that paint is chipped or flaked does not establish that the owner was aware that the chipped or flaked paint contained lead. Stover, 716 N.Y.S.2d 146. Nor has plaintiff established that the allegedly chipped or peeling paint contained lead. There is no evidence that 22 Karnes Street was ever inspected for the presence of lead paint during plaintiff's residency there. And although plaintiff attempts to introduce evidence of lead contamination at a neighboring property, 20 Karnes Street, from an inspection that occurred on February 17, 2012, (21 years after the plaintiff moved out of 22 Karnes Street), such evidence is inadmissible, as the testing occurred 21 years after the alleged exposure, and was conducted in an apartment where the plaintiff did not live.

In further support of their motion, defendant Norman Morrill testified at his deposition that he exclusively handled all aspects of owning and renting 22 Karnes Street, and that his wife Lucille played no role whatsoever in managing the property. Norman Morrill

testified that 22 Karnes Street had never been tested for the presence of lead paint, and that at the time he rented the apartment to the plaintiff's mother, he was not aware of any hazards presented by lead paint. Deposition Testimony of Norman Morrill at p. 74. Plaintiff has not controverted this evidence.

Plaintiff alleges that the Morrill defendants knew that property at 22 Karnes was "old," that the windows were "old," and that the windows had many layers of paint. As stated above, however, general knowledge that a building is "old" fails to establish actual or constructive knowledge that a lead paint hazard exists. Hines by Garret, 684 N.Y.S.2d 594. Plaintiff also alleges that the Morrill defendants were cited with violations of Sections 90-21(C) and 90-21(D) of the Municipal Code of the City of Rochester related to the maintenance of their property. A review of the citations, however, reveals that none of the alleged violations were related to lead paint hazards. See Exhibit 2 to Declaration Number Two of Mo Athari (docket item no. 82-2).

Based on the evidence in the record, I find that plaintiff has failed to establish that the Morrill defendants had notice of any defective lead paint condition at 22 Karnes Street, and therefore has failed to establish that the defendants had any duty to remedy the alleged condition or prevent plaintiff's exposure to the alleged condition. I therefore grant the Morrill defendants' motion for summary judgment.

C.    Defendant Suhr

Defendant Sonja Suhr, the owner of 57 Lime Street during the time that plaintiff lived there (from August, 1992 to October, 1993) seeks summary judgment on the issue of liability on grounds that she did not have actual or constructive notice of any lead paint hazard until she received a notice in February 1993 from the Monroe County Department of Health that lead paint was present in the apartment, and that once she learned of the lead-paint hazard, she promptly remedied the condition.  In support of her motion, Suhr notes that plaintiff's mother never complained of any defective conditions in the apartment either before she moved in or during her tenancy.  Mohr T. at p. 337-338.  Nor did Mohr complain at any time of any chipping paint. Mohr T. at p. 337-338.  Indeed, even after Mohr first discovered chipping paint in February, 2003, she did not inform Suhr of the condition.  Mohr T. at p. 345.

The evidence in the record reveals that Suhr only learned of the lead paint condition at 57 Lime Street after the Monroe County Department of Health conducted a lead paint inspection, and notified Suhr that lead paint, and pealing lead paint, had been found in the apartment.  The uncontroverted evidence in the record also reveals that once Suhr learned of the lead paint hazard, she took prompt steps to abate the condition, and that the Monroe County Department of Health determined the condition to have been corrected as of June 17, 1993.

Once a plaintiff has established that a landlord had actual or constructive notice of a dangerous condition, to impose liability, the plaintiff must establish that the landlord failed to act reasonably in correcting the dangerous condition. See Juarez by Juarez v. Wavecrest Management Team Ltd., 649 N.Y.S.2d 115(N.Y., 1996) (once defendant has notice of defective condition, defendant must be given reasonable opportunity to correct it.); Miller ex rel. Miller v. 135 Realty Associates, L.P., 698 N.Y.S.2d 681 (1st Dep't 1999) (plaintiff can establish a landlord's breach of duty by demonstrating that the landlord's actions in abating the lead paint hazard were not reasonable under the circumstances).

In the instant case, the uncontroverted evidence reveals that upon learning of the lead paint hazard present at 57 Lime Street, defendant Suhr hired contractors to abate the hazard, and indeed, in less than four months, had corrected the dangerous lead condition. Defendant Suhr has submitted the written notice issued by the Monroe County Department of Health in June, 1993 indicating that the lead paint hazard had been corrected. This evidence demonstrates that the defendant acted reasonably to abate the hazardous condition, and plaintiff has failed to provide any evidence that defendant Suhr acted unreasonably once she was informed of the lead paint hazard. See e.g. Marte v. 1090 University Ave., LLC, 856 N.Y.S.2d 559 (1st Dep't 2008)(defendant acted reasonably in abating lead paint hazard where lead paint was

immediately abated after city department of health issued abatement order, and department issued report confirming that the lead paint violation had been corrected less than two months after landlord acquired apartment building.); <u>Miller ex rel. Miller</u>, 698 N.Y.S.2d 681 (landlord's cursory inspections and inadequate abatement attempts failed to meet the standard of reasonable care).  Because Defendant Suhr has established that she acted reasonably in abating the lead paint hazard upon learning of the dangerous lead paint condition, she may not be held liable for plaintiff's alleged lead paint poisoning.[6]  Accordingly, I grant defendant Suhr's motion for summary judgment.

III. <u>The Parties' Remaining Motions</u>

For the reasons set forth above, I deny plaintiff's motion for summary judgment on the issue of the defendants' liability for causing her alleged lead poisoning.  Plaintiff has failed to establish that defendants Norman Morrill, Lucille Morrill, or Robert Sullivan had any notice, either actual or constructive, of a dangerous lead paint condition in their respective properties. Plaintiff has further failed to establish that defendant Suhr had any notice of a defective lead paint condition until February, 1993.  Plaintiff has failed to establish that Suhr acted

---

[6] Although plaintiff's complaint alleges that Suhr negligently abated the lead paint hazard, plaintiff has presented no evidence or further argument that the abatement process was conducted negligently.  Accordingly, I find that plaintiff has failed to establish any claim of negligent abatement.

unreasonably or negligently once she learned of the lead paint condition. Rather, the record shows that once Suhr learned of the lead paint condition, she abated the condition in less than four months.

Plaintiff's motion to strike certain affirmative defenses raised by the defendants, and to preclude certain defense experts from testifying or being considered by the Court, or, in the alternative, for a <u>Daubert</u> hearing are denied as moot, as is defendant Sullivan's motion to strike.

## **CONCLUSION**

For the reasons set forth above, defendant Sullivan's motion for summary judgment (docket item no. 71) is granted. The Morrill defendants motion for summary judgment (docket item no. 111) is granted. Defendant Suhr's motion for summary judgment (docket item no. 112) is granted.

Plaintiff's motion for summary judgment and for a <u>Daubert</u> hearing (docket item no. 77) is denied. Defendant Sullivan's motion to strike (docket item no. 99) is denied.

The Clerk of the Court is directed to enter judgment in favor of all defendants and close the case.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca
_____
    MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          November 25, 2013